IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

GERARDO GRIMALDO MARTINEZ,

*Defendant*.

Case No. 24-CR-10026-EFM

**MEMORANDUM AND ORDER**

Before the Court is Defendant Geraldo Grimaldo Martinez's Motion to Dismiss (Doc. 25). Defendant was indicted for violating 18 U.S.C. § 922(g)(5)(A), which prohibits an alien illegally and unlawfully in the United States from possessing a firearm. Defendant challenges the constitutionality of § 922(g)(5)(A) on Second Amendment grounds both facially and as applied to him. For the reasons stated below, the Court denies Defendant's Motion to Dismiss.

**I.     Factual and Procedural Background[1]**

In the early morning hours of September 17, 2023, Defendant Gerardo Grimaldo-Martinez was among several people who were loudly playing music outside near 1515 N Fairview Ave., in Wichita, Kansas. A neighbor asked the group if they would turn down the music. According to the neighbor, the group mocked him and raised the volume of the music. The complaining witness stated that he then took his motorcycle to the small chain link fence that separated the properties

---

[1] The facts in this section are taken from the Government's Response to Defendant's Motion to Dismiss (Doc. 27).

and revved the engine. It was at this time that Defendant pulled out a pistol and fired five rounds into the ground between himself and the complaining witness.

Law enforcement was notified of the encounter, and Wichita Police officers responded to the incident. When police arrived, they observed Defendant attempting to leave the scene in a GMC Sierra. He eventually stopped, but only after officers ordered multiple commands to him. The neighbor told the officers that the driver, Defendant, was the person who fired the rounds into the ground.

Officers performed a pat down search of Defendant and located an unloaded Smith and Wesson, 9mm, Model 439 handgun in his waistband. Officers located two spent 9mm shell casings at the scene. After officers performed standard field sobriety tests, Defendant was arrested for driving while intoxicated. Defendant later submitted to a breathalyzer that showed a blood alcohol content of .162. While Defendant was being booked into the Sedgwick County Jail, a Deputy discovered six additional spent 9mm casings in his left front jean pocket.

On January 24, 2024, Defendant was ordered to be removed to Mexico by an immigration judge, but he was released on an Order of Supervised Release due to a pending Petition for Qualifying Family Member of a U-1 Non-immigrant visa filed by his wife. The application is still pending, and a final determination has not yet been issued.

On March 12, 2024, Defendant was indicted for unlawful possession of a firearm by an alien unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5)(A). On November 12, 2024, Defendant filed a motion to dismiss on Second Amendment grounds. The Government responded on November 29, 2024, and Defendant never filed a reply.

## II.     Legal Standard

Under Federal Rule of Criminal Procedure 12(b)(3), a defendant may "raise by pretrial motion any defense . . . that the court can determine without a trial on the merits," including "failure

to state an offense."[2] "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."[3]

Nonetheless, the Tenth Circuit has recognized that courts "may always ask 'whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence' and dismiss the indictment if its allegations fail that standard."[4] As such, "the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion."[5] Instead, the indictment is tested "solely on the basis of the allegations made on its face, and such allegations are to be taken as true."[6]

When the defendant asserts that a statute is unconstitutional on its face, resolving the motion "doesn't require a trial because it focuses solely on the facts alleged in the indictment and their legal adequacy."[7] Thus, the Court "may entertain motions that require it to answer only pure questions of law."[8] However, when a defendant claims that a statute is unconstitutional as applied—in other words "only in light of the 'facts surrounding the commission of the alleged offense'"—a court may not consider those facts before trial.[9]

---

[2] Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v).

[3] *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).

[4] *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (citing *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006)).

[5] *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994).

[6] *United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006) (quoting *United States v. Reitmeyer*, 356 F.3d 1313, 1316–17 (10th Cir. 2004)).

[7] *Pope*, 613 F.3d at 1260 (emphasis omitted) (citing *United States v. Sampson*, 371 U.S. 75, 78–80 (1962)).

[8] *Id.*

[9] *Id.* at 1261 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).

### III.     Analysis

At the outset, the Court notes that Defendant fails to provide any meaningful argument or explanation to support his cursory assertion that § 922(g)(5)(A) violates the Second Amendment facially and as applied to him. Without any analysis or evaluation of this case compared to precedent, the Court has no substantive basis for ruling in Defendant's favor. Nonetheless, the Court will proceed in its analysis to ensure that the Government has met its—now, very low—burden of demonstrating that the regulation is constitutional.

**A.     As-Applied Challenge**

Defendant contends that § 922(g)(5)(A), as applied to his specific conduct, violates the Second Amendment after the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*.[10] A party "may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both."[11] "An as-applied challenge requires only that the law is unconstitutional as applied to the challenger's case."[12] An "as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case" at hand.[13]

The Court will not resolve Defendant's as-applied challenge at this stage in the proceedings because the Tenth Circuit has directed the district courts "to decide the issue after the government has presented its evidence at trial."[14] "Courts uniformly have held that an as-applied challenge

---

[10] 597 U.S. 1 (2022).

[11] *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011).

[12] *United States v. Davey*, 2024 WL 340763, at *1 (D. Kan. Jan. 30, 2024) (citing *United States v. Streett*, 434 F. Supp. 3d 1125, 1171–72 (D.N.M. 2020)).

[13] *Carel*, 668 F.3d at 1217 (emphasis, citations, and quotations omitted).

[14] *United States v. Bell*, 2017 WL 1479376, at *5 (D. Kan. Apr. 25, 2017) (quoting *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997) (declining to resolve an as-applied challenge to § 922(g)(3) before trial)).

made pretrial is premature and a defendant may reassert the argument post-trial after the government has presented its evidence on the charge."[15] Thus, Court denies Defendant's as-applied challenge as premature.

**B.      Facial Challenge**

Defendant's Second Amendment challenge also fails under the facial standard, despite *Bruen*'s new framework. Before *Bruen*, in *District of Columbia v. Heller*, the Supreme Court recognized that the Second Amendment "conferred an individual right to keep and bear arms."[16] Two years later, in *McDonald v. City of Chicago*, the Court held that this individual right is also "fundamental" and incorporated it against the states by way of the Fourteenth Amendment's Due Process Clause.[17] From these cases, the circuit courts created "a 'two-step' framework for analyzing Second Amendment challenges that combine[] history with means-end scrutiny."[18]

*Bruen* streamlined the circuits' test into one step: "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."[19] But that presumption can be overcome only when the Government successfully "demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation."[20] Thus, to determine whether § 922(g)(5)(A) remains viable post-*Bruen*, the Court must first assess whether the Second Amendment's plain text covers Defendant's alleged conduct.

Although *Bruen* established a new analytical framework, it has not proven to be a major change in the constitutionality of criminal firearm statutes. This is evidenced by the Supreme

---

[15] *Id.* (collecting cases).

[16] 554 U.S. 570, 595 (2008).

[17] 561 U.S. 742, 791 (2010).

[18] *Bruen*, 597 U.S. at 17.

[19] *Id.*

[20] *Id.*

Court's decision in *United States v. Rahimi*,[21] the first case to apply *Bruen*'s framework and uphold § 922(g)(8) as constitutional. Likewise, in the context of § 922(g)(5)(A), no circuit court has held it "to be unconstitutional, either before or after *Bruen*."[22]

    1.    *Plain Text*

At step one of the *Bruen* framework, the Court must consider whether Defendant can claim protection under the Second Amendment. To do so, the Court must apply the "plain text" of the Second Amendment to the individual's "proposed course of conduct."[23] The Second Amendment reads: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[24] Determining exactly who are "the people" entitled to Second Amendment protection requires the Court to conduct a textual analysis.

In this case, Defendant challenges § 922(g)(5)(A), which makes it unlawful for any person "who, being an alien[] is illegally or unlawfully in the United States . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition."

Prior to *Bruen*, the Second, Fourth, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits upheld § 922(g)(5)(A) as constitutional. Specifically, the Fourth, Fifth, and Eighth Circuits found that the Second Amendment does not protect illegally present aliens.[25] In contrast, the Second,

---

[21] 602 U.S. 680 (2024).

[22] *United States v. Rangel-Tapia*, 2024 WL 966385, at *3 (6th Cir. Mar. 6, 2024).

[23] *Bruen*, 597 U.S. at 32.

[24] U.S. Const. amend. II.

[25] *United States v. Carpio-Leon*, 701 F.3d 974, 982 (4th Cir. 2012) (holding, on a § 922(g)(5) as-applied challenge, "that the Second Amendment right to bear arms does not extend to illegal aliens"); *United States v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011), *as revised* (June 29, 2011) (finding, on § 922(g)(5) facial and as-applied challenges, that the phrase 'the people' in the Second Amendment of the Constitution does not include aliens illegally in the United States"); *United States v. Flores*, 663 F.3d 1022, 1023 (8th Cir. 2011) (holding, on a § 922(g)(5) facial challenge, that "the protections of the Second Amendment do not extend to aliens illegally present in this country").

Ninth, Tenth, and Eleventh Circuits upheld § 922(g)(5)(A) without deciding whether illegally present aliens were entitled to Second Amendment protection.[26]

When the Tenth Circuit decided § 922(g)(5)(A)'s constitutionality in 2012, it "hesitate[d] to infer from *Heller* a rule that the right to bear arms is categorically inapplicable to non-citizens," declining to conclude that *Heller* used "the word 'citizen' deliberately."[27] At the time, however, neither *Bruen* nor *Rahimi* had been decided. Since then, the Supreme Court has repeatedly limited the Second Amendment right to "citizens" and "Americans" in each of its post-*Heller* decisions.

For example, in *McDonald*, the Supreme Court repeatedly used the word "citizen" to describe those who enjoy the Second Amendment right to keep and bear arms.[28] Likewise, in *Bruen*, the Supreme Court repeatedly interpreted the phrase "the people" as limited to protecting the rights of "Americans," or "citizens."[29] Again, in *Rahimi*, the Supreme Court referred to the

---

[26] *United States v. Huitron-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012) (emphasis omitted) (addressing a § 922(g)(5) as-applied challenge); *see also United States v. Perez*, 6 F.4th 448, 450 (2d Cir. 2021) (addressing a § 922(g)(5) as-applied challenge); *United States v. Torres*, 911 F.3d 1253, 1261 (9th Cir. 2019) (addressing a § 922(g)(5) facial challenge, stating that "the state of the law precludes us from reaching a definite answer on whether unlawful aliens are included in the scope of the Second Amendment right"); *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1045 (11th Cir. 2022) (in a § 922(g)(5) challenge, stating that "[w]e can assume for the sake of our decision that [defendant] is" among "the people").

[27] *Huitron-Guizar*, 678 F.3d at 1168.

[28] *McDonald*, 561 U.S. at 768 ("citizens must be permitted to use handguns for the core lawful purpose of self-defense" (further quotations and citations omitted)); *id.* at 770 ("right of the citizens to keep and bear arms"); id. at 773 ("right of all citizens to keep and bear arms"); *id.* at 774 ("right of all citizens to keep and bear arms"); *id.* at 776 ("blacks, as citizens, have equal right to protection, and to keep and bear arms for self-defense" (further citations and quotations omitted)).

[29] *Bruen*, 597 U.S. at 70 ("The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." (citing *Heller*, 554 U.S. at 581)); *see also id.* at 8–9 (explaining that in *Heller*, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense"); *id.* at 26 ("The Second Amendment . . . surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" (further quotations omitted)); *id.* at 29 (describing historical inquiry called for under *Bruen* as a consideration of "how and why the regulations burden a law-abiding citizen's right to armed self-defense"); *id.* at 31–32 ("It is undisputed that petitioners . . . two ordinary, law-abiding, adult citizens[] are part of 'the people' whom the Second Amendment protects."); *id.* at 38 ("citizens"); *id.* at 71 (characterizing the right to bear arms as belonging to "citizens"); *id.* at 78 (Alito, J., concurring) ("*Heller* correctly recognized that the Second Amendment codifies the right of ordinary law-abiding Americans to protect themselves from lethal violence by possessing and, if necessary, using a gun.").

right to bear arms as a right of "citizens."[30] And even if these repeated statements in *Heller*, *McDonald*, *Bruen*, and *Rahimi* are merely dicta, this Court is "itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements."[31] Here, the dicta is not only recent but reiterated repeatedly.

But even without a clear Supreme Court or Tenth Circuit ruling on whether an illegally present alien is among "the people" entitled to Second Amendment rights, it appears logically consistent to conclude that such persons do not fit into the categories of "law-abiding" or "citizens." Definitionally, aliens are *not citizens*, and their presence in the United States was attained *unlawfully*. For this very reason, the Eighth Circuit concluded that "the plain text of the [Second] Amendment does not cover *any* conduct by unlawfully present aliens."[32] This reasoning is consistent with Tenth Circuit and Supreme Court precedent. Accordingly, because illegally present aliens are not covered by the plain text of the Second Amendment, the Court denies Defendant's facial challenge.

**IT IS THEREFORE ORDERED** that Defendant Geraldo Grimaldo Martinez's Motion to Dismiss (Doc. 25) is **DENIED**.

---

[30] *Rahimi*, 602 U.S. at 691 ("In *Heller*, this Court held that the right applied to ordinary citizens within the home."); *see also id.* at 700 ("[O]ur Nation's tradition of firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not."); *id.* at 701–02 (explaining that *Heller* and *Bruen* used the term "responsible" to describe "the class of ordinary citizens who undoubtedly enjoy the Second Amendment right," but clarifying that *Heller* and *Bruen* "said nothing about the status of citizens who were not 'responsible'"); *id.* at 709 (Gorsuch, J., concurring) (referring to "an arms-bearing citizenry").

[31] *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996).

[32] *United States v. Sitladeen*, 64 F.4th 978, 987 (2023) (emphasis in original). *But see Huitron-Guizar*, 678 F.3d at 1170 (noting that "[n]othing i[n] this opinion purports to express an opinion on the Second Amendment rights of *lawfully present* aliens" (emphasis in original)).

**IT IS FURTHER ORDERED** the Jury Trial in this matter is reset for Tuesday, January 7, 2025 at 9:00 a.m. in Courtroom 408.

**IT IS SO ORDERED.**

Dated this 12th day of December, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE